### EVA MAKI v. MATTI MAKI.[1]

December 31, 1908.

Nos. 15,900—(92).

**Deed Obtained by Fraud—Evidence.**

In an action to cancel and set aside a conveyance of real property on the ground that it was obtained by fraud and fraudulent representations, the evidence is *held* sufficient to sustain the findings of the trial court to the effect that the allegations of fraud were true.

**Judgment in Divorce—Enforcement.**

A judgment in a divorce action, in which the alimony awarded was declared a specific lien upon certain specified land owned by defendant, *held* to authorize the enforcement thereof by an ordinary execution and sale thereunder.

[1]Reported in 119 N. W. 51.

Action in the district court for Wright county to have a certain deed canceled on the ground that it was obtained by false representations and promises, and to recover $487. The case was tried before Giddings, J., who made findings of fact and ordered a cancellation of the deed, that plaintiff pay to defendant the sum of $713 and defendant have a lien upon the premises to secure that sum, and that upon its payment plaintiff become the owner of the lands. From the judgment entered pursuant to the order, defendant appealed. Affirmed.

*F. E. Latham* and *Daniel Fish,* for appellant.

In Mahoney v. Mahoney, 59 Minn. 347, "the judgment itself provided for that manner of enforcement," and the court said that "even if this was erroneous, it was merely judicial error, which is no ground for collateral attack." Page 351. No such judicial error occurred in the divorce suit between these parties. The judgment did not provide "for that manner of enforcement." It provided "that plaintiff have proper process out of this court to enforce the payment of said $2,-500." Proper process is not a mere execution, such as is issued and levied, first upon the personalty of the judgment debtor, if sufficient thereof can be found, and if not, then upon his real estate not exempt. The execution issued in this case is not in evidence, but its absence is accounted for. It has never been returned by the sheriff and is not in the files. The certificate of sale recites the entry of judgment for $2,-500 and the issue of an execution thereon, directed to the sheriff, "him commanding to make the same from the property of said Mathias Maki and return the same as therein directed." It further recites that "the said sheriff did levy upon the real estate and property of said 'Maki, and·did give due public notice of' the sale of said premises to satisfy said execution."

There was no personal service upon defendant and no attachment of his property. Hence there was no warrant for the entry of a personal money judgment against him. The judgment actually entered can be sustained only upon the ground of the Mahoney case; as one "providing for the division and adjustment of property," and proceeding "upon the theory that the wife has an interest in the property of her husband." 59 Minn. 350.

This judgment called for a judicial sale, not the exercise of a mere ministerial power by the sheriff; a sale under direction of the court, to be reported to and confirmed by the court in order to become effective. It was long ago decided that a sale under execution, upon a money judgment, is not a judicial sale. First Nat. Bank of Hastings v. Rogers, 22 Minn. 224. The proceeding was substantially for the ascertainment and foreclosure of a lien. The statutes in various places plainly provide in cases of that character for the delivery to the sheriff of a transcript of the judgment, which becomes his authority for making the sale, or for a sale by a master or referee. R. L. 1905, § 4488 (mortgage foreclosure by action); section 3518 (mechanic's lien); section 4412 (partition).

But two kinds of execution are permitted: "One against the property of the judgment debtor [generally] and the other for the delivery of real or personal property," with or without damages for withholding the same. Id. § 4289. Neither of these is adapted to the satisfaction of a specific money lien. All such are enforced by the court, according to the exigencies of the particular case. The practice is older than any of our statutes. It is recognized in the provision for a certificate by the sheriff, whether the sale "is made upon execution, or pursuant to a judgment or order of a court." R. L. 1905, § 4308. It is improper and futile to docket such a recovery; it is a decree in chancery, not a personal judgment. Thompson v. Dale, 58 Minn. 365. Decrees for the establishment and satisfaction of liens are judgments in rem, or quasi in rem. 2 Black, Judg. §§ 792, 793, 810. It can hardly be claimed that permission to sell the land "as provided by law in execution sales" amounts to a direction that it be sold "on execution." The learned trial judge so found, but in this he must have been misled by a form prepared for his signature. It is very plain that neither decision nor judgment in the divorce case was drawn to agree with the form used in Mahoney v. Mahoney. The direction is not that plaintiff "have execution," nor that the land be sold "on execution." She is to have "proper process," and when the sale is made, it is to be made as provided by law—that is, in the manner—having reference to notice, offering in parcels, etc., prescribed by statute in cases where the sale is on execution. The difference is obvious. If the Mahoney judgment

was in mind at all, the purpose was to avoid the "judicial error" which the court agrees might have been committed in that case.

*Henry Spindler* and *W. H. Cutting,* for respondent.

After appellant's return from Alaska he took a deed to the land from his former wife. By so doing he recognized her title and acquiesced in what had been done. He elected with full knowledge of the facts. He thus waived his right to question the validity of the sale. 15 Cyc. 259–262; 1 Cyc. 630; 16 Cyc. 802; Pederson v. Christofferson, 97 Minn. 491; 29 Am. & Eng. Enc. (2d Ed.) 1091.

BROWN, J.

The parties to this action intermarried in February, 1895, and thereafter lived upon defendant's farm, where two children were born to them. Both had previously been married, and defendant had two daughters by his former wife, who became members of the new home. Three years after this marriage the husband went to Alaska in an effort to better his financial condition, leaving his wife and four children on the farm. Before departing he arranged with a brother of his wife to manage the farm. He wrote several letters during the first year of his absence, but none after that time, and the wife thereafter heard nothing from him until his return home in 1905, over seven years from the time of his departure. The home farm, upon which plaintiff was left with the children, consisted of about eighty acres, and was incumbered by a mortgage for $1,320, and was worth about $4,500. Defendant sent no money to his wife during his absence, and in no other way contributed to her support or the support of the children.

In 1903, not having heard from the husband for over three years, the wife brought suit for divorce on the ground of desertion, in which she also asked for an allowance of alimony and suit money. The summons therein was served by publication, and in the due course of procedure the cause came on for trial, and the court made findings of fact in accordance with the allegations of the complaint and awarded plaintiff an absolute divorce. The court also found that defendant was the owner of the farm here in question, constituting the homestead of the parties when he left for Alaska; that it was worth $4,500, and incumbered to the amount of about $1,600, including accrued interest. The

court further ordered the entry of judgment in plaintiff's favor for the sum of $2,500 permanent alimony, which included an amount of plaintiff's own funds expended after the marriage for the improvement and operation of the farm and also the costs of the divorce suit. The judgment was decreed a specific lien upon the land, and that it be enforced by proper process of the court. The judgment was docketed and an execution subsequently issued thereon, by virtue of which the land was sold, subject to the existing mortgage; plaintiff being the purchaser at the sale. No redemption was ever made, and plaintiff became the sole and absolute owner of the land.

Thereafter, in 1905, defendant returned from his Alaskan venture, and soon learned of the divorce and the proceedings by which title to the land had become vested in his wife. He brought with him on his return $3,000 in money, but offered no part thereof, so far as the record discloses, to his wife, and perhaps was under no moral or other obligation to do so, inasmuch as she had procured a divorce from him. He occupied the old home after his return, with his wife and children, but did not resume marriage relations.

Soon after his return he procured a conveyance of the land back to him on the agreement, as plaintiff claims, that they were to remarry and resume their former relations as husband and wife. She thereafter learned that he intended to marry another woman, and she sought a home elsewhere. She then brought this action to set aside the deed just referred to on the ground that it was procured from her by the fraudulent acts, conduct, and representations of defendant. The court found the facts in harmony with plaintiff's contention, and to the effect that the conveyance of the land was obtained from plaintiff by fraud and undue influence, that plaintiff executed it in reliance upon defendant's promise that the parties would remarry, and ordered judgment canceling and setting it aside. The court further found that, after the conveyance had been obtained, defendant also persuaded plaintiff to turn over to him the sum of $487, which she had accumulated during his absence, and that this was induced by the same acts of fraud which brought about the conveyance of the land to him. The court further found that subsequent to the execution of this deed defendant paid out for the redemption of the land from the mortgage thereon, the payment of taxes, and $100 to procure the surrender of an existing

lease—in all the sum of $1,200—and to protect him from loss in this respect the cancellation of the deed was conditioned upon the repayment to defendant of that amount, less $487 procured from plaintiff as above stated. This amount, $713, arrived at by deducting $487 from $1,200, the court declared a specific lien upon the land. Judgment was entered accordingly, and defendant appealed.

The assignments of error present two questions: (1) Whether the findings of fact, to the effect that the conveyance from plaintiff to defendant was obtained by fraud and undue influence, are sustained by the evidence; and (2) whether the sale of the land under the execution issued on the judgment in the divorce proceedings was valid. The result of our consideration of both questions leads to an affirmance.

1. While the evidence submitted in support of the allegations of fraud and undue influence, particularly the testimony of the plaintiff, is not so direct and explicit as might be desired, it is sufficient, with the inferences and deductions legitimately to be drawn therefrom, to sustain the findings. Whatever doubts a reading of the record creates are overcome by the fact that the learned trial judge had the witnesses before him, with opportunity to judge of their credibility, their mental strength or weakness in comprehension of their situation at the time of the transaction, and other matters proper to be considered and weighed in determining controverted questions of fact. The evidence is fairly clear that plaintiff understood, from what defendant said to her to induce the conveyance of the land to him, that they were to remarry and resume their former relations as husband and wife, and that defendant intended that she should so understand and believe. She knew that the land then belonged to her. She was living upon it with her two children, and it is wholly unreasonable to believe that she intended to surrender her home, then worth $5,000, for the small sum of $500, which defendant claims to have paid her, and to surrender it to defendant, and thus deprive herself of the means of supporting herself and children.

Yet that is precisely what happened after the conveyance. Defendant married another woman. The plaintiff was compelled in consequence to seek shelter elsewhere. She testified that the $500 paid her at the time of the conveyance she immediately thereafter returned to him, being induced to do so by the same understanding with reference

to their remarriage. In making the conveyance the plaintiff sought the advice of no one, but apparently relied on her belief in defendant's good faith. That she was deceived as a matter of fact the record conclusively shows, and the court was justified in concluding that the defendant intended to deceive her. The result as to defendant leaves him in the same position he was in when he returned from Alaska, except that by his subsequent marriage he wholly cut himself off from obtaining or acquiring any interest in the land by a remarriage with plaintiff. But he has lost nothing by anything that has taken place since his return. The amount paid by him towards clearing the land of the mortgage, the judgment ordered returned to him as a condition to the cancellation of the deed. A careful consideration of the whole record leaves our minds clear that the learned trial court came to a proper conclusion on the facts.

2. Plaintiff's title to the land, upon which she predicates her action to cancel the deed to defendant, rests wholly in the execution sale in the divorce case. Defendant contends that that sale was unauthorized and void. If this contention be sound, then plaintiff never acquired title to the land, and the ownership thereof still remains in defendant, subject to the judgment for alimony. The validity of the judgment in the divorce suit is not called in question; but it is claimed that the enforcement thereof by ordinary execution was irregular and of no effect. Our statutes on the subject of divorce authorize the court to decree to the wife, on a severance of the marriage relation, such alimony out of the estate of the husband as it may deem just and reasonable, and may make the same a specific lien upon any specified tract or parcel of land owned by him, "or authorize its enforcement by execution against his property, real or personal." [R. L. 1905, § 3590.] The judgment in the divorce action here involved awarded to plaintiff the sum of $2,500 permanent alimony, it was made and declared a specific lien on this property, and directed that upon the entry of the judgment "plaintiff have proper process out of this court to enforce the payment" thereof, and "that said lands be sold subject to the mortgage indebtedness thereon, as provided by law in execution sales." Subsequent to the entry of judgment, plaintiff caused to be issued thereon an ordinary execution, under and by virtue of which the land was in

the due course of procedure struck off to her as the highest and best bidder at the sale.

Defendant does not complain of or point out any defects in the proceedings under the execution, but insists that the judgment could not be enforced in that manner; that the statute contains no justification for an ordinary execution in such cases, except where the court has jurisdiction of the person of the defendant and renders against him an ordinary money judgment; that in this case no such judgment was or could have been rendered, for the reason that the jurisdiction over defendant was obtained solely by publication of the summons; and it is claimed that this particular judgment could be enforced only by a judicial sale conducted in harmony with the rules of procedure applicable to such sales. It is true that the judgment here under consideration was in rem, and not in personam; but we are wholly at a loss to understand why the particular manner of its enforcement, as between a judicial sale and a sale under execution' issued as upon a personal judgment, at all affects the substantial rights of defendant.

The judgment was a specific lien upon this land, and the enforcement thereof by execution was confined exclusively to its sale. The result would have been precisely the same, had the other form of procedure been adopted. It would, therefore, conceding that for present purposes the proceeding was irregular, be a strain to declare upon collateral attack the sale to be wholly void. Again, it is evident that the judgment in the divorce action contemplated this form of procedure. After declaring the alimony a specific lien upon the land, it directed that "proper process" be issued for its enforcement and that the land be sold "as provided by law in execution sales." The only "process" issued out of the district court for the enforcement of its judgments, under our practice, is an execution, and that was undoubtedly the only process in the mind of the court in the case at bar. We have no statute prescribing general rules or providing the manner and method of conducting "judicial sales." Where such sales are not controlled by statute, the judgment providing therefor, under the common-law rules, must designate the time, place and manner of giving notice of sale, and be specific in all essential respects. 24 Cyc. 9, et seq., and cases cited. The judgment before us did not proceed on this theory, but, on the contrary, by fair in-

tendment of its language authorized and contemplated an ordinary execution sale. Such was the procedure adopted in Mahoney v. Mahoney, 59 Minn. 347, 61 N. W. 334, where the court said that, if it was error, it was without prejudice to the substantial rights of the complaining party.

Judgment affirmed.