AGNES LORRAINE RUPRECHT v. FRANK ELMER RUPRECHT.

96 N. W. (2d) 14.

March 13, 1959—No. 37,526.

*Firestone & Firestone,* for appellant.
*Bouthilet, Daubney & Swenson,* for respondent.

NELSON, JUSTICE.

In the divorce action here involved plaintiff originally sought separate maintenance and an order awarding her the household goods and homestead of the parties and the custody of their youngest child. The parties were married August 12, 1933. When the action was instituted plaintiff and defendant were 48 and 49 years of age respectively. There were two children born of the marriage—Gary Frank Ruprecht, son, born May 17, 1938, and Gail Agnes Ruprecht, daughter, born September 8, 1943. Defendant duly filed an answer and cross-complaint seeking an absolute divorce on the grounds of cruel and inhuman treatment, the care and custody of the two children, and an order of the court for the sale of the home of the parties and disposition of the proceeds, together with the household goods and furnishings, as the court might deem just and proper.

The matter was tried without a jury. At the opening of the trial, plaintiff moved to amend her prayer for relief to include a demand for an absolute divorce. Defendant's counsel admitted in open court having notice thereof and agreed to the amendment. It was stated that the parties wished only to litigate the questions of alimony, support money, and property division. Plaintiff's counsel advised the court that it would be the purpose of the plaintiff to prove the essential facts of the divorce on the same basis as a default divorce, to which there was no objection and to which the court assented.

It is indicated by the record that this was the third action of a similar nature, the first two having been terminated by reconciliation and dismissal. Plaintiff and defendant were present throughout the trial, and both were afforded a full opportunity to testify in their own behalf and to cross-examine. After proof of the essential facts in support of plaintiff's allegation that she was entitled to an absolute divorce on the

grounds of cruel and inhuman treatment, the testimony was directed to the question of alimony, support money, and property division. The matter of the property, debts, and liabilities of the parties was fully gone into. The only property of any consequence owned by the parties was the homestead which they owned in joint tenancy and which was valued at $20,000. They also owned furniture and household effects and a 1948 Cadillac automobile. Defendant testified that the Cadillac was valued at $150 and that he still owed money in connection with its initial acquisition in the sum of $840. The homestead property had been acquired in 1940. It was mortgaged from the time of acquisition and had been twice refinanced. It was at the time of trial subject to a first mortgage in the amount of $11,178.04, upon which indebtedness payments of $101 were required monthly.

The record indicates that the wife had contributed $1,300 to the purchase of a Buick automobile in 1941, the amount being advanced by her father; that the household goods, furnishings, and effects, as well as the homestead, had been financed out of the earnings of the defendant; and that his earnings at the time of trial were $10,400 as his annual salary, netting him monthly take-home pay of $671.03, after deductions for withholding taxes, social security, retirement, and hospitalization. Other liabilities which defendant had become obligated to pay were found by the court to be $520.06 for medical and dental services; $1,684.93 in Minnesota income tax arrearages, upon which he is now paying $50 per month; $1,535 for attorneys' fees and expenses incurred on the part of the plaintiff; $500 for attorneys' fees and expenses incurred in the present action on his own behalf; and other debts totaling $1,971.88. All debts and liabilities totaled the sum of $6,211.87.

Defendant took the position that the parties had a joint obligation with reference to the liquidation of the debts and that the creditors would have to be satisfied in order to assure him the opportunity to continue his present employment as assistant merchandise manager of the St. Paul Mail Order House of Montgomery Ward & Company, where he has been employed for the past 35 years. It appears that defendant has twice recently been subject to garnishment proceedings, and he insists that the only way that he can meet the payments of alimony and support money ordered by the court is to sell the homestead

property held in joint tenancy to liquidate the mortgage indebtedness from the sale proceeds as well as the other liabilities.

The record indicates that the son, who is now 20 years of age, has chosen to live with his father, who has undertaken his support but without any stated amount therefor ordered by the court. While the plaintiff complains that the alimony and the money awarded to her for the support of her daughter will not be ample to support her upon the plane that she has been accustomed to, the record indicates that she was at the time of the marriage employed with earnings at that time equal to if not in excess of those earned by her husband. It is true that since their marriage she has not worked but has given her time to homemaking and housekeeping. It is our view in considering the record as a whole that the court has expressly taken into consideration the financial situation of the parties, especially that of the defendant, bordering upon insolvency, its probable impact upon his employment, the carrying charges involved, the age of the parties, and defendant's reasonable ability to pay. The court by statute, as well as under our decisions, is authorized to decree to the wife such alimony and to the children such support money as it may deem just and reasonable, taking into account the ability of the husband, the character and situation of the parties, and all other circumstances presently involved. To that extent the trial court has clearly been granted the right to exercise its authority and discretionary power. The determination of the awards and fixing the amounts thereof always rest within the sound discretion of the trial court. The court undoubtedly did not overlook the fact that the trial court retains jurisdiction at all times to revise and alter the decree with respect to the amount of alimony and support money to be paid. Should the future needs of the plaintiff, in the light of all the circumstances of the case, require or justify a revision, the broad powers of the court in that respect furnish ample protection. See, Louden v. Louden, 221 Minn. 338, 22 N. W. (2d) 164.

The court below found plaintiff entitled to a decree awarding her an absolute divorce and the custody of their youngest child, subject to the right of reasonable visitation by defendant. The son was given the freedom of establishing his residence with either parent. The court awarded plaintiff as permanent alimony $150 per month and as sup-

port money for the daughter $100 per month, both sums to be paid semimonthly. The plaintiff was also awarded free and clear of any claim of defendant all household goods, furniture, and furnishings with the exception of certain items listed in the findings including the 1948 Cadillac automobile. The court found that the parties are owners as joint tenants of the homestead property and that it has a market value of between $18,000 and $20,000 subject to an unpaid first mortgage hereinbefore referred to. The court ordered that the homestead be sold at the earliest possible opportunity, but not later than January 31, 1958, and that the net proceeds of the sale be applied toward the debts of the parties as set forth in the findings, including plaintiff's and defendant's attorneys' fees, any surplus remaining thereafter to be awarded and paid to the plaintiff. With respect to the attorneys' fees and expenses separately incurred by plaintiff and defendant, the order of the court provides that the total thereof shall be paid from the proceeds of the sale of the house in so far as the proceeds are sufficient to pay same and any unpaid balance remaining shall be paid by defendant.

The trial court made and filed its findings of fact, conclusions of law, and order for judgment on December 10, 1957. On January 7, 1958, the plaintiff filed a dismissal of the action in the following form:

"The above entitled action is hereby in all things dismissed without prejudice and without costs or disbursements to either party.

"Such dismissal shall not release the defendant from his obligation to pay to the plaintiff such sums as the Court provided as and for attorneys' fees for the prosecution of this and other actions."

The plaintiff on the same date also filed a notice of motion for an order recognizing the dismissal or for amended findings or a new trial. This motion was denied. Plaintiff appeals from the foregoing order, seeking a dismissal of the action, and if this be denied, increased alimony and reversal of the order directing sale of the homestead, or, in the alternative, a new trial.

The question arises whether the plaintiff's filing of her dismissal of the action was timely in view of the court's decision filed on December 10, 1957. Other questions presented under plaintiff's assignments of error are whether the trial court abused its discretion and

acted contrary to law in limiting the award of permanent alimony to the plaintiff to $150 per month and whether the trial court abused its discretion and proceeded contrary to law in ordering the sale of the homestead property and that the proceeds be applied in liquidation of the debts of the parties and the balance, if any, to the plaintiff as her separate property.

■ The plaintiff relies upon Brodsky v. Brodsky, 164 Minn. 102, 204 N. W. 915, as authority for the validity of the dismissal. The defendant contends that, even though the court, upon filing its findings of fact, conclusions of law, and order for judgment, granted a stay of entry of judgment of 40 days, nothing remained but the perfunctory and ministerial act of the clerk to enter judgment in conformance with the court's decision which was a final declaration of the court in announcing the legal consequences of the facts found upon the record. Plaintiff admits that she amended her complaint at the opening of the trial for the purpose of seeking an absolute divorce. She was permitted to introduce testimony to establish her statutory grounds therefor. The case was thereafter fully tried with respect to the issues of permanent alimony, support money, and disposition of property. Defendant had cross-claimed, seeking an absolute divorce. Defendant was fully cross-examined by plaintiff's counsel on all issues involved in the trial after plaintiff had been permitted to enter proof of her right to a divorce as in a case of default, defendant waiving any and all rights to contest the plaintiff upon that issue. The court refused to dismiss on the grounds that the parties had submitted to a full trial of the issues involved and the court had clearly specified the relief granted by duly entering and filing its final decision.

In the Brodsky case this court made it clear that at no time in the proceedings before the court below had the plaintiff asked for or desired a divorce. At the close of the trial there, the court announced that in its opinion an absolute divorce should be granted and suggested that if the plaintiff amended her complaint a divorce would be granted to her upon the grounds of cruel and inhuman treatment. Plaintiff's counsel moved for leave to amend the complaint to meet the court's suggestion and leave was granted in plaintiff's presence without any objection on her part. The complaint, however, was not amended in form. Shortly

thereafter plaintiff insisted to her counsel that she did not want an absolute divorce and made an affidavit to that effect. She then applied for leave to amend her amended complaint, restoring it to its original form asking for a limited divorce and support. The trial court heard the motion and denied it. Later, testimony was taken as to the value of the property. Plaintiff's counsel withdrew from the case and other counsel was substituted. This court on appeal by plaintiff said that it was manifest from a reading of the pleadings and the record that at no time had plaintiff asked for or desired a divorce; that at the first amendment of the complaint no opinion had been indicated by the court below as to division of the property. At the hearing of plaintiff's motion to restore her complaint to its original form, she insisted both to her counsel and to the court that she did not want an absolute divorce. This court in disposing of the case said (164 Minn. 103, 204 N. W. 915):

"* * * It is well settled that either spouse, asking for a decree of divorce, may, *at any time before the decree is granted,* withdraw or dismiss the demand as a matter of right, and that, after such withdrawal, the court has no authority to grant a divorce in favor of such party." (Italics supplied.)

In Tikalsky v. Tikalsky, 166 Minn. 468, 208 N. W. 180, the trial court determined all the issues and in July 1920 made an order directing that judgment of divorce be entered. Nothing remained to be done in that case except to enter judgment in the judgment book. Plaintiff's motion for a new trial was denied; she appealed but failed to perfect the appeal and it was dismissed. Some 4 years later defendant died testate and by his will gave his property to his children by a former marriage. Plaintiff discovered that judgment had not been entered in the divorce action and filed a claim in probate court to share in defendant's estate. The special administrator of the estate and the devisees under defendant's will petitioned the district court to be substituted as defendants in the divorce suit and for entry of judgment nunc pro tunc as of September 15, 1920. The court below granted the petition and in June 1925 judgment was entered as of September 15, 1920. Upon appeal, this court affirmed the judgment, holding that

since the judicial act was complete upon the court's announcing its decision directing that judgment of divorce be entered all that remained to be done was for the clerk to enter the judgment in the judgment book.

This court has held that a nunc pro tunc entry of judgment will be allowed as of the time when the party would otherwise have been entitled to it, if justice requires, where delay in entering it is caused by action of the court. Wilcox v. Schloner, 222 Minn. 45, 23 N. W. (2d) 19; Hampshire Arms Hotel Co. v. Wells, 210 Minn. 286, 298 N. W. 452; Borer v. Chapman, 119 U. S. 587, 7 S. Ct. 342, 30 L. ed. 532. In the early case of Piper v. Johnston, 12 Minn. 27 (60), this court ruled that the clerk may enter judgment on a verdict, decree of the court, or report of referee without any special order of the court to that effect, and without notice to the other party. Also see, Whitaker v. McClung, 14 Minn. 131 (170); Wilcox v. Hedwall, 186 Minn. 504, 243 N. W. 709; In re Anton (D. Minn.) 11 F. Supp. 345.

Rule 58.01 of Rules of Civil Procedure provides as follows with reference to the signing and entry of judgments:

"* * * The judgment in all cases shall be entered and signed by the clerk in the judgment book; this entry constitutes the entry of the judgment; and the judgment is not effective before such entry. A copy thereof, also signed by the clerk, shall be attached to the judgment roll."

In Burke v. Burke, 142 Iowa 206, 119 N. W. 129, involving a divorce the Iowa Supreme Court in discussing the rendition of a judgment said that it is a judicial act, but its entry is purely ministerial, and, in absence of statute, an entry is not essential, though a judgment is essential to the validity of the entry. The distinction therefore is one of finality, and it must first be determined whether the order in question is a final determination of the proceedings or not.

Divorces are purely statutory and follow the course of equity so far as the same is applicable. The terms "judgment," "decree," "decision," and "order" are more or less allied in nature as well as closely allied in meaning. Whatever distinctions have existed between the terms "judgment" and "decree" arose from the differences in the proceedings at law and in equity and are inherent in the nature of the two systems. Under our code system of practice in this state we do not distinguish

between forms of action at law or suits in equity. However, the necessity for recognition of equitable rights, and for the granting of equitable relief, continues as before the adoption of the code. Among the rules of the old system not abrogated by the new is the rule that a decree pronounced by the court and reduced to writing is admissible in evidence, independent of the fact of its enrollment and entry in the judgment book. However, it seems clear that no decree can be said to be entered of record until it is formally drawn out and filed by the clerk. See, 1 Freeman, Judgments (5 ed.) § 50.

We think it well established that the final "decree" of a court announced in an equitable proceeding is commonly alluded to as its judgment and that frequently in the statutes the terms "decree" and "judgment" are used synonymously, no distinction being made between their application to actions at law and suits in equity. A decree, as distinguished from an order, is final and is made at the hearing of the cause and entered accordingly. It constitutes a final declaration of the court announcing the legal consequences of all the facts found upon the trial.[1]

We think any contention on the part of the plaintiff that the decision of the trial court in the instant action was not a final declaration upon all the rights between the parties as to all the facts found at the trial is without merit, as is the dismissal of the plaintiff's action after the rendering and the filing of the court's decision herein. See, Rules 41.01 and 58, Rules of Civil Procedure; La Fond v. La Fond, 102 Minn. 344, 113 N. W. 896; Rhein v. Rhein, 244 Minn. 260, 69 N. W. (2d) 657; and Annotation, 138 A. L. R. 1100, 1104, where it is stated that:

"Statutes governing dismissals generally provide that a plaintiff shall not have a right to the dismissal of his action in the event that an answer or cross bill seeking affirmative relief has been filed. In most cases raising the question, the courts, frequently in application of such a general statute, have denied the right of a plaintiff in a divorce or separation action to dismiss his bill where the defendant has filed a cross bill or an answer in the nature of a cross bill, in which affirmative

[1]See, 11 Wd. & Phr. (Perm. ed.) pp. 409 to 413; Black, Law Dictionary (4 ed.) p. 498.

relief is asked."

See, 6 Dunnell, Dig. (3 ed.) §§ 2799 and 2801, wherein it is stated in the former that "A judgment of divorce is governed by the same rules as a judgment in an ordinary civil action, as regards conclusiveness and collateral attack."

 Plaintiff contends that the trial court in effect violated our homestead exemption laws and thereby abused its discretion in ordering the sale of the homestead over the objection of the plaintiff and in directing that the proceeds be used to pay claims of creditors.

The statutory provisions on divorce here involved are M. S. A. 518.54, 518.55, 518.57 to 518.60, 518.63, 518.65. It is conceded that the matter of awarding permanent alimony and support money rests in the sound discretion of the trial court. However, while discretionary with the trial court, the statutory standards of justice and reasonableness are to be observed and regard must be had for the financial status of the parties, and the ability to pay, as well as the future welfare of all parties concerned. In the disposition of property acquired during coverture the court may upon statutory authority make such disposition as shall appear just and equitable, having regard to the nature and determination of the issues in the case. In order to effect a division or award of property as provided by §§ 518.58 and 518.59, the court may order any such property sold or he may order a partition as to real estate. In exercising sound discretion the court may consider the ages of the parties and the earning ability of each; the conduct of their marriage and its duration; the station they occupy in life; the circumstances and necessities of each; the probability of continuing present employment into the future, as well as the capacity and ability to obtain new employment under changing circumstances and needs; the financial circumstances of the parties as shown by the property acquired, together with its value and income-producing capacity; the accumulated debts and liabilities if any; and all facts with respect to whether the property of the parties has been accumulated before or after marriage. The court may also consider all other matters disclosed by the evidence. Eck v. Eck, 252 Minn. 290, 90 N. W. (2d) 211; Johnson v. Johnson, 250 Minn. 282, 84 N. W. (2d) 249; Hellman v. Hellman, 250 Minn.

422, 84 N. W. (2d) 367; Baskerville v. Baskerville, 246 Minn. 496, 75 N. W. (2d) 762; Swanson v. Swanson, 233 Minn. 354, 46 N. W. (2d) 878; Krusemark v. Krusemark, 232 Minn. 416, 46 N. W. (2d) 647; Baker v. Baker, 224 Minn. 117, 28 N. W. (2d) 164; 6 Dunnell, Dig. (3 ed.) § 2803; Ruff v. Ruff, 78 N. D. 775, 52 N. W. (2d) 107; 17A Am. Jur., Divorce and Separation, § 931; 27 C. J. S., Divorce, §§ 291, 292; also see, Hokamp v. Hokamp, 32 Wash. (2d) 593, 203 P. (2d) 357, wherein the trial court ordered the sale of the homestead in effecting a property division between the parties.

The rule has been well established by the foregoing decisions that an award of alimony and support money, together with an adjudication of the property rights of the parties, will be overturned on appeal only when, in the light of the evidence as a whole, the trial court has abused its discretion even though this court might find the facts to be different if it had the factfinding function. The trial court retains at all times a wide discretion in the disposition of divorce matters.

Plaintiff is not without remedy in the future. If by reason of changed circumstances the plaintiff should wish to petition for a reconsideration of her present alimony award or the award of support money for her daughter, she is at liberty to do so, addressing her petition to the sound discretion of the trial court. In Louden v. Louden, 221 Minn. 338, 342, 22 N. W. (2d) 164, 167, this court said:

"* * * The power of the court to revise a decree for alimony is very broad and gives the defendant [wife] ample protection if her future needs, in the light of all the circumstances of the case, justify a revision. Burke v. Burke, 208 Minn. 1, 5, 292 N. W. 426, 428; Hartigan v. Hartigan, 145 Minn. 27, 29, 176 N. W. 180, 181; 2 Dunnell, Dig. & Supp. § 2805."

However, as the matter stands at the present date based upon the whole of the evidence disclosed by the record herein, and especially the near insolvent condition of the defendant's finances and their probable effect upon his future income if continued, it is our view that the trial court's award of alimony and support money is sustained by the evidence. In awarding alimony, the needs of the wife as well as the income of the husband are to be taken into consideration.

Under § 518.54, subd. 5, the statute sets forth what property acquired during "coverture" means and what it includes. Section 518.58 under the title of "disposition of property acquired during coverture" states:

"Upon a divorce for any cause, or upon an annulment, the court may make such disposition of the property of the parties acquired during coverture as shall appear just and equitable, having regard to the nature and determination of the issues in the case, the amount of alimony or support money, if any, awarded in the judgment, the manner by which said property was acquired and the persons paying or supplying the consideration therefor, the charges or liens imposed thereon to secure payment of alimony or support money, and all the facts and circumstances of the case."

Section 518.63 relates to awarding right of occupancy of the homestead, under circumstances where it might be beneficial to the parties or either of them, exclusive or otherwise, upon a final decree of divorce or modification thereof. Section 518.65 provides that:

"In order to effect a division or award of property as is provided by sections 518.58 and 518.59, the court may order any such property sold or partitioned. Personal property may be ordered sold in such manner as shall be directed by the court, and real estate may be partitioned in the manner provided by Chapter 558, Minnesota Statutes of 1949 insofar as the same is applicable."

■ Returning to plaintiff's contention that the trial court had no right or power to order the sale of the homestead and in the exercise of its discretion to dispose of the proceeds as directed, we must first resort to §§ 518.54, subd. 5, and 518.58, which provide the rule as to disposition of property acquired during coverture, and to §§ 518.63 and 518.65 for the further statutory guides of the court in that respect.

In Mahoney v. Mahoney, 59 Minn. 347, 61 N. W. 334, it was held, Mr. Justice Mitchell speaking for the court, that:

"In making an adjustment or division of the property of the husband between the parties in an action for divorce, the court may set off to the wife a whole or a part of the homestead, or may, in lieu thereof, allow her alimony, and make it a specific lien on the homestead. The

provisions of the constitution and statutes relating to 'homestead exemptions' have no application to such a case."

The court in the Mahoney case said that while the homestead laws of the various states differ from each other in many respects, yet this principle runs through the decisions in all of them; that in making an adjustment or division of the property of the husband in case of a divorce, the "homestead exemption" has no more application than it would have in an ordinary suit for partition.[2]

In Albertson v. Albertson, 243 Minn. 212, 67 N. W. (2d) 463, this court made it clear that the division of property in divorce proceedings is regulated solely by statute.

In Baker v. Baker, 224 Minn. 117, 121, 28 N. W. (2d) 164, 167, where joint tenancy property was involved, this court pointed out that:

"In determining the amount of property to be decreed out of the husband's estate to the wife pursuant to § 518.22, the trial court may properly take into consideration the entire value of any property held by the parties in joint tenancy when it appears that such property was acquired with funds supplied by the husband. In effecting a property settlement, the husband is not to be penalized because he has seen fit in the course of his marriage to safeguard the interests and welfare of his wife by placing certain property in joint tenancy. There is no merit in plaintiff's contention that only one-half the proceeds derived from the sale of their joint-tenancy home should be considered in determining whether she was awarded a sufficient amount of the husband's estate."

The exercise of the trial court's discretion in that respect was in no manner subject to control by the statutes of this state relating to exemptions as a matter of general law. The disposition of the property

---

[2]For other cases that have followed the rule of the Mahoney case, see Bensel v. Hall, 177 Minn. 178, 225 N. W. 104, in which case the court held that a division of property is essentially a different thing from the awarding of alimony in a divorce proceeding; Limnell v. Limnell, 176 Minn. 393, 223 N. W. 609; Roberts v. Roberts, 135 Minn. 397, 161 N. W. 148, L. R. A. 1917C, 1140; Longbotham v. Longbotham, 119 Minn. 139, 137 N. W. 387; Maki v. Maki, 106 Minn. 357, 119 N. W. 51; Annotation, 54 A. L. R. (2d) 1430.

of the parties including the homestead in a divorce proceeding is governed entirely by the provisions of c. 518 relating to divorce.

Plaintiff insists that the district court had no power to order or compel the defendant to make payments of debts and liabilities, which constitute payments to third parties, even though such payments actually represent an obligation to the wife, citing Clausen v. Clausen, 250 Minn. 293, 84 N. W. (2d) 675. She also contends that if the law of the Clausen case be applied the court could not order the defendant to make payments to the creditors from his earnings. We think the facts in the situation involved in the Clausen case are distinguishable and that it is not controlling here. The court in that case dealt with contempt proceedings. The trial court had ordered the defendant to make payments on an obligation arising out of a promissory note which note the plaintiff had endorsed to a third party. The defendant had been ordered to make payments to the third party rather than to the former wife. This court reversed stating that there was no apparent reason why the district court could not accomplish the desired result in a proper manner and saying (250 Minn. 302, 84 N. W. [2d] 681):

"* * * For example, in the instant case the court instead of ordering alimony payments of $100 per month and payments of $100 per month to the bank could have ordered alimony in the amount of $200 a month or it could have awarded her a lump sum sufficient to retire the note, payable to plaintiff at the rate of $100 per month."

That case as we view it in no manner controls the exercise of the discretion of the trial court in passing upon the question of alimony, support money, and division of property under the sections of the divorce statutes herein considered.

In applying the provisions of the foregoing statutes and the principles enunciated in the decisions of this court herein cited to the facts in the instant case, we find no abuse of discretion on the part of the trial court in the disposition of the homestead property as directed or the personal property as awarded.

Affirmed.