Irma Rita RUZIC, Petitioner, Appellant,

v.

Joseph J. RUZIC, Respondent.

No. 48354.

Supreme Court of Minnesota.

July 13, 1979.

Shanedling, Phillips, Gross & Aaron and Bert M. Gross, Minneapolis, for petitioner, appellant.

Joseph J. Ruzic, pro se.

SHERAN, Chief Justice.

Appeal from an order denying the parties' post-trial motions for amended findings in an action for dissolution of marriage.[1] Both the appellant-wife and the respondent-husband contend that the trial court abused its discretion in its distribution of the property acquired during the marriage and in its award of alimony to appellant. Respondent objects also to the award to appellant for her attorneys fees. We affirm.

■ Although respondent has challenged the findings with respect to the ownership and value of some of the property as lacking evidentiary support, our review of the record, giving due regard to the trial court's opportunity to judge the credibility of the witnesses, satisfies us that the findings have adequate support. Accordingly, they will not be disturbed in spite of respondent's claim that the property awarded to him is of considerably less value than that awarded to appellant.

The findings disclose that both parties are 48 years of age, they were married in 1953, and are the parents of a son born in 1956 and a daughter born in 1961. Respondent has been a building contractor, restaurant operator, and real estate developer and has shown ability to make substantial profits from real estate purchase, development, and sale. Appellant has a high school education and took a typing course at night school. Since her marriage she has worked as a caretaker in an apartment building the parties once owned and occasionally as a waitress and hostess at the Eden House, a restaurant owned by Brandin' Iron, Inc., a corporation wholly owned by respondent. Prior to her marriage she had been employed as a typist and stenographer, and it is likely she can find employment.

The parties owned as joint tenants a double house at 6921–6923 McCauley Trail, Edina. Appellant lives in one apartment, and the other was rented for $575 a month at the time of trial. Its market value was found to be $160,000, subject to a mortgage

---

1. We permitted the appeal pursuant to Rule 105, Rules of Civil Appellate Procedure.

balance of approximately $12,500 and unpaid real estate taxes and penalties of $12,000. Furnishings in the home were valued at $10,000.

Brandin' Iron, respondent's corporation, owned a farmhouse and 16 acres of land in Eden Prairie, where respondent lives. It has a market value of about $57,000. The corporation also owned machinery valued at $8,000 and a 1970 Cadillac, not valued by the court, which respondent thought was worth $4,000. The corporation also owned, subject to a $50,000 mortgage, the property on which the Eden House restaurant was located. On May 14, 1976, almost a year after this action was commenced, Brandin' Iron sold this property to Hinn-Watanabe U.S.A., Inc., for a total price of $265,000, of which $10,000 was then paid. The balance was secured by a purchase money mortgage on which monthly payments are $2,500, including interest at 9 percent. The balance on this mortgage had been reduced to $210,000 by the time of trial.[2]

In 1973 respondent sold three parcels of land for $158,000 in cash and, although he claimed other parties interested in the properties received a substantial portion of this money, respondent was found to have been the owner and in control of a substantial part of this $158,000. In 1974 he purchased a certificate of deposit in the amount of $140,000 in his name alone and, in spite of claims that others owned $100,000 of this money, the court found that respondent himself owned, controlled, and had secreted funds of at least $140,000. Respondent also owned a promissory note in the amount of $49,000 from Shareholders' Real Estate Corporation.

In February 1976 a check of $160,000 was deposited in the Brandin' Iron checking account, $134,000 of which was then transferred to Douglas Groebe, a friend and business associate. Respondent admitted ownership of the balance of $26,000 but did not account for it, as was also true of $50,000 he received in payments under the Hinn-Watanabe mortgage.

The court found that appellant's living expenses were $1,250 a month and that respondent is able to make payments of $600 per month to her. It found that her reasonable attorneys fees and expenses were $8,000 and $500, respectively, and that respondent had paid $450 to apply thereon.

On these facts the court awarded appellant the Edina house, its furnishings, the 1970 Cadillac, which had been in her possession, and $25,000 in cash. It awarded respondent the Eden Prairie farmhouse and land, the machinery, Brandin' Iron's interest in the note and mortgage from Hinn-Watanabe, all stock in Brandin' Iron, the Shareholders' note, and all other cash. It awarded appellant $600 a month alimony for 6 years or until her remarriage, providing also that in the event of respondent's prior death the obligation would remain a charge on his estate. It ordered respondent to pay the parties' debts except the mortgage balance on the McCauley Trail property, the taxes due on that property, and personal debts of $600 incurred by appellant, which it required her to pay. The court also ordered respondent to pay $4,050 to apply on appellant's attorneys fees.

The property division thus left appellant with the double house worth $160,000, but subject to a mortgage balance and unpaid taxes of about $24,000, a cash award of $25,000 apparently for use in paying the taxes due and the mortgage balance on the house, the household furnishings valued at $10,000, and the 1970 Cadillac, which was not valued by the court but obviously was worth something. Appellant thus received property in excess of $170,000. Respondent was awarded the Eden Prairie property valued at $57,000, machinery valued at $8,000, cash of at least $115,000, the $49,000 note,

---

2.  In August 1976 respondent caused Brandin' Iron to assign a portion of the Hinn-Watanabe mortgage to a friend and business associate, to secure a "purported" debt to him, and in April 1977 respondent caused his corporation to assign an additional portion of the purchase money mortgage to another friend and business associate to secure a purported loan in the amount of $22,000. Neither assignment was filed or recorded with the register of deeds or registrar of titles.

and the Hinn-Watanabe note and mortgage, which had a net value of approximately $160,000. These assets, assuming that the $49,000 note and the Hinn-Watanabe mortgage payments are ultimately paid in full, total $389,000.

■ Appellant claims that she should have received half of the property—worth approximately $560,000—accumulated during coverture. The statute under which the court acted, Minn.St.1976, § 518.58, does not so require. It provides:

"Upon a dissolution of a marriage, or upon an annulment, the court may make such disposition of the property of the parties acquired during coverture as shall appear just and equitable, having regard to the nature and determination of the issues in the case, the amount of alimony or support money, if any, awarded in the judgment, the manner by which said property was acquired and the persons paying or supplying the consideration therefor, the charges or liens imposed thereon to secure payment of alimony or support money, and all the facts and circumstances of the case." [3]

This court has often enumerated the factors properly considered under this statute in dividing property acquired during coverture. We summarized them in *Ruprecht v. Ruprecht*, 255 Minn. 80, 90, 96 N.W.2d 14, 23 (1959):

"In exercising sound discretion the court may consider the ages of the parties and the earning ability of each; the conduct of their marriage and its duration; the station they occupy in life; the circumstances and necessities of each; the probability of continuing present employment into the future, as well as the capacity and ability to obtain new employment under changing circumstances and needs; the financial circumstances of the parties as shown by the property acquired, together with its value and income-producing capacity; the accumulat-

ed debts and liabilities if any; and all facts with respect to whether the property of the parties has been accumulated before or after marriage. The court may also consider all other matters disclosed by the evidence."

■ Contrary to appellant's claims, the findings summarized above demonstrate that the court in this case considered these factors. While she was awarded about 30 percent of the property, she received a substantial estate, including property capable of furnishing rental income of $575 to $600 a month. Moreover, the alimony award is properly considered as a factor in the property division under § 518.58. That award of $600 a month for the next 6 years will total $43,200 if appellant does not remarry, and it will be a charge against respondent's estate if he should die during the period. The court found that appellant's reasonable living expenses are approximately $1,250 a month and awarded her the McCauley Trail property for the apparent purposes of furnishing her income of about $600 a month as well as permitting her to maintain her present home if she desires. The court considered her work experience and found she would be likely to find employment. It would seem that the property and alimony awarded her will permit her to save much of what she earns. Respondent's ability to make substantial profits from real estate development would appear to exceed appellant's probable earning ability,[4] but the actual worth of some of the property awarded to him may be less than its face value and he has the obligation to pay alimony as stated and to pay $250 a month in child support until October 10, 1979. We are required to conclude that the trial court properly exercised its discretion in its disposition of the property.

■ Appellant contends that she was entitled to permanent alimony as long as she remains unmarried. It is true that in *Cash-*

---

**3.** We do not pass on appellant's claim that Minn.St. 518.58, as amended by L.1978, c. 772, § 53, effective March 1, 1979, requires equal division.

**4.** It would be helpful to a reviewing court if the trial court could make specific findings as to both the gross and net income each party is likely to be able to earn in future years.

*man v. Cashman,* 256 N.W.2d 640 (Minn. 1977), we held that the wife was entitled to an award of permanent alimony. There, however, the wife's health was impaired, her employability unlikely, and the property awarded her was not enough to permit investment which would bring her an adequate future income. Those circumstances are not found here. At this time, in view of the nature and amount of property awarded appellant and her apparent employability, the alimony award must be held within the bounds of the trial court's discretion.

■ We have concluded also that the award of $4,050 respondent is required to pay to appellant for her attorneys fees was within the bounds of the trial court's discretion. The trial court determined, as stated, that total fees of $8,000 and expenses of $500 were reasonable, based on testimony of appellant's attorney as to his experience and customary fees and his testimony that he had been required to spend more than the usual time on the case, primarily because of difficulties encountered in discovery and because of respondent's refusal to comply with court orders. Although the total fee approved was liberal, respondent was only required to pay approximately half of it. Cf. *Adams v. Adams,* 301 Minn. 495, 222 N.W.2d 329 (1974). We will not interfere with the award, although we have concluded that respondent should not be required to pay any fees incurred by appellant in pursuing this appeal. Neither party is allowed attorneys fees for the appeal to this court.

Affirmed.

OTIS, Justice (dissenting).

In my opinion it is inappropriate for this court to pass on, and approve, a nominal award of alimony without any findings on the part of the trial court regarding the amount of the husband's income. I would remand for specific findings on that critical issue.

We are here confronted with a record where the husband's testimony was in a number of findings specifically rejected by the trial court as being unsupported by the facts bearing on the value of the properties he owned and the incumbrances against them. It appears the husband has accumulated an estate worth some $550,000. Although his wife has received 30 percent of that amount, the trial court has limited her alimony to $600 a month for a period of only six years.

I submit that after a marriage of 24 years during which the appellant has developed no work skills except as a caretaker or waitress for her husband's business properties, and where she will be 53 years of age when her alimony terminates, it is patently unjust to cut her off without any regard to what her husband's actual earnings or earning capacity may be. It seems obvious to me that neither a trial court nor an appellate court is competent to approve an award for maintenance without any concrete evidence of the husband's income. Judging from the size of his business transactions it can only be inferred that he has successfully concealed from both his wife and the court information which would mandate a more substantial and more enduring award if all the facts were known. Accordingly I believe the interests of justice compel a remand for further evidence regarding the source and amount of the respondent's current income so that the trial court may have an opportunity to reassess the issue of maintenance in the light of a more comprehensive examination of respondent's resources and actual earnings.

PETERSON, Justice.

I join in the dissenting opinion of Mr. Justice OTIS.

KELLY, Justice.

I join in the dissent of Mr. Justice OTIS.