## EDWIN M. WILCOX v. VORIS WILCOX.[1]

July 12, 1946.

No. 34,192.

[1]Reported in 24 N. W. (2d) 237.

*Loring & Anderson,* for appellant.
*Erling Swenson,* for respondent.

JULIUS J. OLSON, JUSTICE.

This was an action for divorce brought by the husband against his wife. Since the factual background is important, we think a rather full recital essential.

The parties were married January 20, 1921. After they had lived together for nearly 18 years, this action was begun in December 1938. Based on defendant's intemperate use of intoxicating liquor, plaintiff alleged that for more than a year before the action was begun defendant had been "in a state of habitual drunkenness." While the cause was pending, defendant was on several occasions convicted of drunkenness. In November 1939, on plaintiff's motion, leave was granted to serve and file a supplemental complaint. This, in addition to what had already been originally alleged, set forth that on March 15, 1939, defendant was convicted on a drunkenness charge in the municipal court of Minneapolis and sentenced to pay a fine of $10 or suffer a workhouse sentence; that on May 22 she was convicted on a similar charge and sentenced to 30 days in the workhouse; and that again on October 7 she was

convicted of being drunk and sentenced to the workhouse for 90 days. While so confined and in the circumstances stated, her attorney prepared and served an amended answer wherein she denied generally and specifically the controversial issues upon which the complaint was founded. By cross-bill, she sought divorce on the ground of extreme cruelty on her husband's part. Plaintiff's reply put in issue these claims.

Next we find that while so confined a stipulation was entered into, executed by the parties themselves, although the instrument clearly shows that it was prepared by counsel. Thereby, plaintiff agreed to pay his wife, if a divorce were granted, $300 upon the entry of judgment, $100 as attorney's fees, and—

"the further sum of twenty-five ($25.00) dollars on the 1st day of January, 1940, and twenty-five ($25.00) dollars on the 1st day of each and every month thereafter to and including the 1st day of December, 1941, payable at Marquette National Bank of Minneapolis." Upon compliance therewith, plaintiff was to be released "of all liability for alimony, temporary and permanent, suit money, attorneys' fees and all other claims of every kind and character heretofore existing and arising by reason of the marriage relations between said parties * * *."

This stipulation was explained to defendant by her then acting attorney. Promptly thereafter the cause was heard on November 14, 1939, as one "in default, except by a stipulation as to property rights." The divorce was granted, and the findings and decree recognized and approved the provisions of the stipulation, which was "made a part hereof as though specifically set forth herein."

In January 1940, defendant sought to have the decree modified so as to grant her additional support and alimony allowance. The motion was submitted on numerous affidavits, pro and con, and on oral testimony. The court denied the motion on May 1, 1940. In a similar motion made in November 1940, defendant sought modification of the decree so as to provide for $50 per month "for an unlimited period of time and until the further order of the court." That motion "of the defendant to increase the alimony to be paid

by plaintiff" was denied. On December 22, 1941, she again sought further relief, since the monthly payments provided for in the decree would end that month. She asserted unemployment, illness, and total lack of means of subsistence; "that it will be necessary for affiant to apply for" public relief "unless" the husband was required to make further subsistence payments. That motion was also denied, the court saying:

"* * * Defendant is now endeavoring to have the judgment and decree modified so as to extend the payment of alimony beyond the time originally fixed. Before the court would be justified in granting such a motion some showing must be made showing a change in the financial condition of the plaintiff since the time the last motion was heard and denied, that would warrant such modification. No such showing has been made.

"It appears from the record that the defendant is addicted to the excessive use of intoxicating liquor, and that she has been convicted of drunkenness in the Municipal Court of this city five times since the filing of the divorce decree. It is evident that this unfortunate woman is in need of expert medical study and treatment which could be better brought about by hospitalization than by an increase in alimony payments, when we take into consideration her inability to prudently make use of these payments in the past."

Then, on January 5, 1944, again upon her motion for relief, the court, in denying her motion, said:

"* * * on motion by defendant for an order amending the judgment and decree entered herein on November 20, 1939, to 'provide for the plaintiff to pay to defendant a substantial sum of money per month towards her support' on the ground that there has been a substantial change in the circumstances of the parties since said judgment was entered. * * *

"After hearing and considering the argument of counsel for the respective parties, together with all the files and records herein, it is

"Ordered, that said motion be and the same is hereby denied."

Lastly, on defendant's motion to amend the decree, the trial court, after hearing the parties, concluded that the decree should be so amended as to provide the wife with $10 per week as and "for permanent alimony until further order of the court." That is the order from which plaintiff has appealed. It was made October 22, 1945.

The court's memorandum discloses that, upon the showing made,—

"it appears to the satisfaction of this court, that defendant has not been drinking since April of 1944. She has made a valiant and successful struggle to overcome the liquor habit. She is a member in good standing of Alcoholics Anonymous, and affidavits by prominent members of this organization show that plaintiff has not drunk since April of 1944. The court's experience with the members of that organization during the past three years gives it every reason to place a great deal of reliance in their statements."

The court recited the fact that defendant was receiving only $3.50 a week for living expenses and $12.50 a month to pay for a room from the relief department of Minneapolis. This allowance, in view of defendant's physical disabilities, which had substantially developed "for the worse," the court deemed so inadequate as to require a modification of the decree. Also, the court felt that the fact that plaintiff's financial position has steadily improved since the decree was made so that he is now earning $190 per month; that, in addition, he has inherited money and property to the extent of nearly $6,000; that he is no longer required to support their son, who is now self-sustaining, a member of the military service, and married; and that plaintiff's living expenses amount to only $75 per month were factors showing such a change in the situation of the parties as to provide ample justification for increasing plaintiff's burdens under the original decree. Speaking of defendant's past behavior, the court observed:

"So far as defendant's past record of drinking is concerned, she contends that plaintiff originally taught her to drink and encouraged her in her drinking, and this was borne out by the testimony

of one of the witnesses who stated that the plaintiff himself often drank but that he was strong and could 'take it' while she was weak and could not."

And as the legal basis upon which the order was made, the court said:

"Decrees of divorce may be modified for good cause shown on clear proof of new facts showing changed conditions of the parties rendering such modification equitable. Holmes v. Holmes, 90 Minn. 466, 97 N. W. 147. This may be done notwithstanding the fact that a decree is based upon a stipulation. Warren v. Warren, 116 Minn. 458, 133 N. W. 1009."

■ Minn. St. 1941, § 518.23 (Mason St. 1927, § 8603), provides:

"After an order or decree for alimony, or other allowance for the wife and children, or either of them, * * * the court, from time to time, on petition of either of the parties, may revise and alter such order or decree respecting the amount of such alimony or allowance, and the payment thereof, * * * and may make any order respecting any of these matters which it might have made in the original action."

That our cases have given full force and effect to the provisions of this statute will readily be seen by reference to the cases cited in 2 Dunnell, Dig. & Supp. § 2805. Perhaps we should briefly comment upon the facts and principles involved in some of these.

In Hartigan v. Hartigan, 145 Minn. 27, 29, 30, 176 N. W. 180, 181, we said that the statutory power "to revise or alter a decree for alimony is very broad." There, the husband, in default because of accrued alimony payments, sought a modification of the decree. Plaintiff (the wife) had remarried. Our holding was that, "While remarriage does not, in and of itself, as a matter of law, require a modification of a decree which calls for monthly instalments of alimony, still it is in ordinary cases a very powerful argument in favor of a modification." Here, we think the facts recited show just as conclusively an "argument in favor of a modification" as did the remarriage in the Hartigan case.

In Haskell v. Haskell, 116 Minn. 10, 132 N. W. 1129, we held that where the court in awarding judgment for alimony, whether payable in a gross amount or in installments, has authority to revise or modify the judgment upon application by either party for good cause shown, such modification may be made upon facts showing a substantial change in the financial circumstances of the one required to pay such allowance, or the one receiving the same; and that such application to modify is addressed largely to the discretion of the trial court. That was our holding even though defendant in the original decree was required to and did furnish a bond for the faithful performance of the obligations created by the decree.

■ In Hartigan v. Hartigan, 142 Minn. 274, 277, 171 N. W. 925, 927, we held:

"* * * The statute having regard for the uncertainties of the future gives the court a continuing power concerning the alimony part of the decree insofar as it relates to the support of the wife or children, so that it may be revised to meet changed conditions of the parties."

■ Alimony is purely a matter of statutory creation and is not awarded to the wife as a penalty, but rather as a substitute for the husband's duty to provide adequate means for her support. Haskell v. Haskell, 119 Minn. 484, 487, 138 N. W. 787, 789.

■ The cited statute expressly confers jurisdiction upon the district court to make an order modifying the decree as to the payment of alimony if in fact it is shown that there has been a substantial change in the financial ability of the husband to meet the wife's needs and requirements. As we held in Lindbloom v. Lindbloom, 180 Minn. 33, 230 N. W. 117, in applications of this sort the trial court's determination lies largely with it, and its determination will not be disturbed on appeal except for abuse of such discretion.

In Randall v. Randall, 181 Minn. 18, 231 N. W. 413, several applications for modification of the decree had been made, one of which was made by the husband more than two years after the

original decree had been entered. After a hearing on his applica-
tion, a stipulation between the parties, approved by the court, be-
came the basis for an order that the husband should convey to his
wife a given lot with improvements thereon (181 Minn. 19, 231
N. W. 413) "in lieu of all alimony and support money for the
minor children." The husband, on appeal to this court, contended
that, since the order was founded upon a stipulation freely made
by the parties, it became conclusive and final and, as such, was
not subject to revision by the court. We thought otherwise, saying
and holding (181 Minn. 19, 231 N. W. 413) :

"* * * This position is untenable. The statute expressly em-
powers the court to revise, alter and amend from time to time the
provision for alimony and the support of the children. * * * The
fact that the provision for alimony and support of the children
was agreed upon by the parties and was incorporated in the decree
pursuant to a stipulation made by them does not affect the power
to make subsequent changes therein conferred upon the court by
the statute."

Plaintiff thinks that Warner v. Warner, 219 Minn. 59, 17 N. W.
(2d) 58, has limited the force and effect of the cases to which we
have referred. He is mistaken. In that case, the question was
whether the original decree of divorce had made any provision for
alimony or support of the children. There, the trial court found
that it was (219 Minn. 70, 17 N. W. [2d] 64) "the intention of the
parties that a full and complete property settlement had been made,
and that there was no alimony or support money [to plaintiff] of
any kind to be paid by defendant." Here, obviously, that was not
the situation. Nor do we find that any of the trial judges who
have had a hand in passing upon the motions to which we have
referred labored under any such misapprehension. In each order
the matter was heard and determined upon the facts shown. Failure
of adequate proof to show a substantial change in the husband's
ability to meet the additional alimony payments asked for, to-
gether with the wife's intemperate habits, is what brought about
the denial of her motions. Her addiction to the intemperate use

of alcoholic beverages was without doubt an important element in the trial court's holdings. What led to the order of modification here for review was that defendant's "valiant and successful struggle" to overcome her former uncontrollable habit had brought about such a reformation as to lead the court to believe that she would continue her struggle and finally succeed in its eradication.

We cannot close our eyes to the fact that intoxication and excessive drinking vitally affect the social, economic, and political life of every community. A workhouse sentence may relieve a particular traffic hazard for a brief period of time, but as a cure it accomplishes nothing. The association known as Alcoholics Anonymous has been of great aid to those who have become victims of the habit. Let us hope that defendant's future conduct will not prove a disappointment.

While it is not for us to preach a sermon, anyone reading this record must admit that it furnishes abundant material for a text. As we have shown, more than a quarter of a century has passed since these parties entered upon their life together. Each took the other for better or for worse and until death should them part. Unfortunately, the wife became a victim of alcoholism—a slave to its influence. But this ailment (for such it became) did not lead to any moral delinquency on her part. There is not even a suggestion of anything like that in this record.

Their only son was in the military service of his country when the matter was heard which resulted in the order here for review. Two letters written by him to his mother while in service speak convincingly of his Christian upbringing, his filial devotion, and his love for his mother. The first is dated December 15, 1943, and reads in part as follows:

"* * * Mother, I have always loved you, and I will always be a good son. I know you want me to be happy in this life. I have the most wonderful wife in the world. I am very lonely away from her because she means life to me. Without her I am very unhappy, but I will be back to her some day. Mother, I do love her so much! I love you so much too mother! *Please be good for me. I have*

*prayed every night that someday you would stop your bad habit and make me so proud of you. Dearest mother, you will do that for me, won't you?* I am asking you to do it because I do love you, and I want you to be my good mother.

"I know how lonely you must be. I have thought about that so many nights. But, mother, don't give up. God holds the answer to your unhappiness. If you confide in him, he will forgive you and make you one of his happy children. Mother, I wish you would pray for his forgiveness and seek his help and guidance. If you do, he will take you into his heart and protect you and make you *my darling mother. Mother, I have always loved you!*" (Italics supplied.)

Then, on May 3, 1945, he wrote a Mother's Day letter, from which we quote as follows:

"* * * I hope you are feeling well and getting along nicely. I want to send you all my love for mother's day. I hope you will continue to take good care of yourself and carry on the best you can. I know things are rather lonely for you back there all alone, but I know you will do the best you can, * * *.

"* * * I guess you are one of the clubs steady members by this time. I am glad you have taken such an interest in that organization and I imagine that makes things less lonely.

*       *       *       *       *

"Well, mother, I want you to have a pleasant Mothers Day,. and I want to pass on my love to you. You were very good to me, and I shall always remember it. I think of you very often and I shall see you again as soon as I return home."

The first letter was evidently written before his mother had joined Alcoholics Anonymous; the second after she had joined. That these letters have been of great help to her in her fight to free herself from her former habit seems reasonably clear.

It does not seem unreasonable that the husband, in all fairness to society, to his former wife, the mother of his fine son, and to the maintenance of his own self-respect, should be required to bear the burden imposed by law and good morals of supporting her. It

seems unnatural that he should even think of doing less. Instead of making her reformation more difficult of attainment by further bickering or litigation, let us hope that he may acquire a new spirit of helpfulness and exercise a small measure of Christian charity. We cannot believe that this husband wishes to place himself in the same category with those persons whom Jesus rebuked when He said, as they were about to inflict upon a sinning woman the severe punishment prescribed for her dereliction by the Mosaic law, "He that is without sin among you, let him first cast a stone at her." Rather, may we not hope that he will find it in his heart to say to his wife what Jesus said to that unfortunate woman, whom "no man" had condemned, "Neither do I condemn thee: go, and sin no more."

■ Upon careful review of the entire record and in the light of our prior decisions, we conclude that the evidence amply sustains the trial court's order, and that it should be and is hereby affirmed. Defendant is allowed $150 counsel fees in this court, plus taxable costs and disbursements.

Affirmed.

Magney, Justice (dissenting).

In Quist v. Quist, 207 Minn. 257, 259, 290 N. W. 561, 562, we stated:

"The law is well settled that to warrant a modification of an allowance fixed by a divorce decree there must be proof of such a substantial change in the situation of the parties from that in which they were when the decree was rendered as to justify a modification. Sufficient cause must have intervened since the decree for changing the allowance."

In that case, the court stated that defendant, the husband, in support of his application, did not show any change in his income making him less able to pay. The court denied his request for reduction.

In Hagen v. Hagen, 212 Minn. 488, 490, 4 N. W. (2d) 100, 101, the court reiterated the rule. It also quoted from Clarizio v.

Castigliano, 201 Minn. 590, 592, 277 N. W. 262, 263, where this court said:

"* * * This authority [the authority to modify alimony allowances] is to be exercised cautiously and only upon new facts occurring after the judgment, or upon facts existing before the judgment of which a party was excusably ignorant at the time when the judgment was rendered."

In the present case, the court ordered plaintiff, in conformity with a stipulation entered into between the parties, to pay defendant $300 upon entry of judgment and $25 per month from January 1, 1940, to December 1, 1941, plus $100 attorney's fees. Judgment was entered November 20, 1939. Plaintiff, the husband, was granted the divorce. He was given the custody of an 18-year-old son. At that time defendant was an habitual drunkard. She also suffered from a nervous and physical condition which she claimed prevented her from doing any work. The question, and the only one here, is whether there is proof of such a substantial change in the situation of the parties from that in which they were when the decree was rendered as to justify a modification of the allowance fixed by the divorce decree. The trial court in granting defendant's motion considered many matters which had no bearing on the issue before it.

At the time of the divorce plaintiff was earning $160 per month. Since that time, his father, Herbert Wilcox, has died. Sometime prior to December 8, 1943, plaintiff received $467.58 as his share of the proceeds from the sale of a house belonging to his father's estate. He was then indebted to a brother in the sum of $2,850. Out of the $467.58, he paid his brother $151, and the balance he used in the payment of debts and to maintain his son while attending school. In 1941, a distribution of $4,750 of personal property, consisting of notes, was made in his father's estate. No cash was distributed. There are six heirs. Out of the real estate sold, plaintiff's share was $5,900. He paid out $3,500 on account of debts and $688 in income taxes. He still owes $1,500, and estimates

a dental bill at $450. He earns $190 per month. After deduction for taxes and social security, his net monthly income is $158.30.

In the spring of 1944, defendant was able to overcome her addiction to alcoholism, but she still claims to be nervous. Also, she fractured her arm in the early part of 1945, and at the time of the hearing she claimed that she was incapacitated therefrom.

On October 22, 1945, the trial court ordered plaintiff to pay defendant ten dollars per week as permanent alimony plus $50 attorney's fees and five dollars costs.

In view of the facts set out above, the question here is whether there was such a substantial change in the situation of the parties as to justify a modification of the decree.

As to defendant, it cannot be said that her situation has changed for the worse since the granting of the divorce to plaintiff. She has now overcome her disease and is no longer an habitual drunkard. The evidence does not disclose a substantial change for the worse in her situation so as to justify modification. As to plaintiff, the inheritance he received from his father was chiefly used to pay debts. There is nothing in the record to show that at the time of the hearing he retained any part of it. The court made no allowance out of any such fund. At the time of the divorce plaintiff was earning $160 per month. At the time of the hearing his net income, after deductions for income taxes and social security, was $158.30. The dollar in the meantime had greatly decreased in value. The son was 18 years of age at the time of the divorce. There is nothing in the record to show what plaintiff was paying out for his support at that time or to what extent, if any, the son was supporting himself. By reason of money inherited, plaintiff has been able to reduce or wipe out his debts. As to his income, there certainly has not been any substantial change for the better. In my opinion, there is no "proof of such a substantial change in the situation of the parties from that in which they were when the decree was rendered as to justify a modification." Plaintiff's financial situation has not changed substantially for the better, and defendant's condition has not changed substantially for the worse

since the original decree for alimony was made at the time of the granting of the divorce. Therefore, I respectfully dissent.

PETERSON, JUSTICE (dissenting).
I concur in the dissent.

MATSON, JUSTICE (dissenting).
I concur in the dissent.

