Dennis M. ECKHOLM,
Petitioner, Appellant,

v.

Donna M. ECKHOLM, Respondent.

Nos. C9–84–2127, C1–85–9.

Court of Appeals of Minnesota.

May 28, 1985.

Ronald B. Sieloff, Sieloff & Bierman, P.A., St. Paul, for appellant.

Roland J. Whitcomb, Roland J. Whitcomb, P.A., Minneapolis, for respondent.

Heard, considered and decided by POPO-VICH, C.J., and SEDGWICK and RANDALL, JJ.

## OPINION

RANDALL, Judge.

In this post-dissolution matter, the husband moved to terminate his obligation to pay maintenance and to reduce his support obligations. Wife countered by seeking arrearages of maintenance and child support, audit costs, expert witness fees, costs, and attorney fees. The trial court denied husband's motion for modification, entered judgment in wife's favor for half of the arrearages she sought, and ordered husband to pay audit fees and expert witness fees. The court denied wife's motion for fees for transcripts of hearings and depositions and for attorney fees. Husband appeals from the order and the judgment, and wife seeks review of that portion of the judgment which excuses half of husband's arrearages. This court granted husband's unopposed motion to consolidate the appeals from the order and the judgment. We affirm in part, reverse in part, and remand so the court may take additional testimony and determine for what length of time wife requires rehabilitative maintenance.

## FACTS

Donna and Dennis Eckholm were divorced in 1972. The decree was entered pursuant to a lengthy stipulation agreed to by the parties.

At the time of the divorce, the parties had four minor children, and had been married for fourteen years. Dennis was an oral surgeon, operating his business as a sole proprietor, and Donna was not employed outside the home. The parties owned a home in North Oaks, Minnesota. The decree provided that the wife be granted custody of all four children and possession and sole ownership of the home. It also granted the wife permanent "alimony" and child support based upon husband's income as defined in the decree, which was to be determined each year, granted her ownership of certain insurance policies upon husband's life and required husband to pay the premiums on those policies, and gave her a cash settlement of $8,000.

The maintenance and child support provisions of the decree were tied to husband's income. For years in which husband earned less than $57,000, he was to pay annual alimony of $19,200 and annual support of $4,800. For years in which husband earned more than $110,000, he was to pay annual alimony of $36,000 and annual support of $9,000. For earnings in between, there was a schedule in the decree. These amounts, however, were to be reduced by 18.75% as each child reached age 21, became emancipated, or married. "Alimony" as well as child support was to be reduced. After all the children have left home, wife is, under the decree, entitled to lifetime alimony of a minimum of $6,000 and a maximum of $11,250. "Income" as defined in the decree means "any and all income ... from his business or profession .. gross receipts of the business or profession less proper deductions attributable to such receipts." Further, deductions are not to include "any contributions made with respect to the plaintiff, ... to a qualified or non-qualified retirement plan ..."

The decree also provided for the allocation of audit costs in the event wife suspected husband had wrongly stated his income in order to figure the amount of alimony and support due in any year. If an audit revealed husband had misstated his income by 5% or more, husband was required to pay the cost of the audit in its entirety; otherwise the cost was to be split or borne entirely by wife.

The decree provides for reduction in child support when each child reaches 21, marries, or becomes emancipated, whichever comes first. At the time of the hearing on the instant motions, there remained only two minor children at home. The two oldest children, LuAnne and Suzanne, were over 21. LuAnne graduated from high school in June 1977 and married in September 1979. In the interim, she worked spo-

radically and lived with her mother. She paid room and board of $15.00 per week to live at home. Husband contended LuAnne became emancipated on March 1, 1978, when she was one month shy of her 19th birthday, and reduced his support payments on that date. He also contends that he notified wife of his decision to consider LuAnne emancipated and that she did not object. Suzanne graduated from high school in June 1979 and entered college that fall. She worked summers for her father in his dental office. She transferred from Mankato State to the University of Minnesota before her junior year (September 1981) against her parents' wishes, and paid for her own tuition and books there. Her mother, however, paid her rent. Suzanne turned 21 in February of that year. Husband contends Suzanne became emancipated on October 1, 1981, and he notified wife of his decision to reduce his child support payments as of that date. She did not respond.

By the time of the hearing, wife's house in North Oaks was worth over $200,000, and was subject to mortgages of about $62,000. Wife had apparently been trying to sell it, but had not had much success. She had rejected an offer of $200,000, and a sale for $245,000 fell through because the purchasers could not obtain financing. Husband argues that wife only showed the house to 18 people between January 31, 1983 and October 3, 1983, and contends that demonstrates lack of a good faith effort on her part. The house costs approximately $2,000 per month to maintain.

Wife was still unemployed at the time of the hearing; she has performed some at-home medical-custodial services for elderly people for which she has received nominal compensation or no compensation. Her health is good; she was (as of the hearing) 48 years old. She has not remarried. Husband is still working as an oral surgeon. He, too, was 48 at the time of the hearing. He has remarried; his wife is employed as a school teacher. He incorporated his business in 1973 and receives W–2 income from the corporation. The corporation makes retirement contributions on his behalf, but he does not receive those amounts as income. He claims his monthly living expenses are $9,546.00, compared with $6,548.65 in 1972, and alleges his former wife's monthly expenses are $2,594.00 if the house is not sold or $1,198.00 if it is sold. Husband's earnings at the time of the divorce were $61,050. In 1982 he earned $101,542. This figure includes contributions made by his corporation on his behalf to profit sharing and pension plans.

### ISSUES

1. Did the trial court err in refusing to order modification of alimony and child support?

2. Did the trial court err in finding arrearages of $42,000, or in forgiving half of those arrearages?

3. Did the trial court err in forgiving one-half of those arrearages?

4. Did the trial court err in ordering appellant to bear the entire cost of the audit and to pay witness fees but refusing to order him to pay respondent's attorney fees?

### ANALYSIS

#### I.

*Modification:*

■ Before the court can modify the amount of maintenance, the party seeking the change must show "(1) substantially increased or decreased earnings of a party; (2) substantially increased or decreased need of a party; * * * or (4) a change in the cost of living for either party as measured by the federal bureau of statistics, any of which makes the terms unreasonable and unfair." Minn.Stat. § 518.64, subd. 2 (1982).

Husband's earnings have not substantially decreased from the time of the divorce; they have, in fact, increased. Wife's earnings have not substantially increased from the time of the divorce; in 1972 she had no earned income and in 1982 she had about $5,000 in earned income. The change in

the cost of living has affected both parties equally. Husband argues that wife's needs have decreased substantially and that his needs have increased substantially. To the extent wife's needs have decreased because of the maturity of the children, it was foreseen in the initial decree and provided for by the 18.75% reduction in child support *and* alimony as each child becomes emancipated. The evidence does not support husband's allegation that his needs have increased substantially. Husband has failed to show he is entitled to a reduction in the amount of maintenance or child support.

Husband may be entitled to a modification in the duration of the maintenance award, however. Testimony at trial indicated that a woman of wife's age and talents in good health could obtain training to qualify for a starting salary of about $15,000. In *McClelland v. McClelland*, 359 N.W.2d 7 (Minn.1984) and *Abuzzahab v. Abuzzahab*, 359 N.W.2d 12 (Minn.1984) the supreme court indicated that permanent spousal maintenance should be reserved for those spouses who, after long-term "traditional" marriages, are unlikely candidates for vocational rehabilitation. Wife here does not present such a situation. The trial court, on remand, should take testimony to determine the likelihood of successful vocational rehabilitation and the amount of time such rehabilitation is likely to take.

## II.

### Arrearages

The trial court found that there were arrearages of child support and maintenance payments of just over $42,000 because husband had under-reported his income and had determined to treat his two oldest children as emancipated when, the court determined, they were not. However, the court decided that equity demanded forgiveness of half of the arrearages because, when husband informed wife that he considered LuAnne and Suzanne emancipated, wife made no protest. Husband now argues that there were no arrearages,

but even if there were, all arrearages should be forgiven since they were not willful. Wife argues that forgiving even half of the arrearages was erroneous because husband did not show that the failure to pay in full was not willful.

Minn.Stat. § 518.64, subd. 2, provides that downward modifications in child support or maintenance may not be made retroactive unless there is a showing that any failure to pay in accord with the terms of the original order was not willful. In *Gabbert v. Gabbert*, 358 N.W.2d 163 (Minn. App.1984), *pet. for rev. denied* (Minn., Feb. 27, 1985), we interpreted the statute strictly, finding that a party had not shown his failure to pay maintenance to be "not willful" even where he may have had grounds for not paying, where he had not made a motion to terminate maintenance. Here, however, because the decree provided for automatic reduction in payments when each of the children became emancipated, husband did not have to move for a reduction when a child either reached 21, became emancipated, or married. Since he notified wife when he considered each child emancipated and she did not object, his improper reduction in payments after that notification could be considered "not willful." The trial court is accorded great deference in deciding whether to forgive arrearages, and we do not find that it erred as a matter of law. *See Bledsoe v. Bledsoe*, 344 N.W.2d 892 (Minn.App.1984).

The other part of the arrearages (besides that caused by the claimed emancipation of the children) was caused by husband under-reporting his income to wife. The decree provides that amounts paid "with respect to" husband to a retirement plan may not be deducted from his income for purposes of determining support and maintenance. Husband argues that since his income now comes from his corporation in the form of W–2 income, that is the only income that should be considered in setting the payments. His corporation, however, has been making retirement contributions on his behalf. Since the decree provides

for the inclusion of amounts paid *for* husband, not necessarily *by* husband, those amounts should be included. The decree also defines income as "gross receipts of the business or profession less proper deductions * * *." Since corporate income is income from husband's business or profession, it should be included in the figure used to compute support and maintenance.

## III

### Costs

 In requiring husband to pay the audit cost and the cost of expert witnesses (the CPA who conducted the audit and an employment evaluator), the trial court was following the dictates of the original decree. The court did *not* require husband to pay wife's legal fees because they tended to balance out his own attorney fees, which were in the same range. An award of attorney fees is largely within the discretion of the trial court and should not be disturbed absent an abuse of that discretion. *Davis v. Davis*, 306 Minn. 536, 235 N.W.2d 836 (1975).

Husband also wants to stop paying the premiums on the insurance policies awarded to wife and to regain ownership of at least one of the policies (the whole life policy, which has a significant cash value). However, the policies and the husband's duty to pay the premiums were given wife as part of the property settlement. Except for occupancy of the homestead, divisions of real and personal property in a dissolution are final "and may be revoked or modified only where the court finds the existence of conditions that justify reopening a judgment under the laws of this state." Minn.Stat. § 518.64, subd. 2 (1982). The trial court did not find the need to reopen this judgment, and we do not.

## DECISION

1. Trial court erred in refusing to consider modifying the maintenance award to limit its duration. We remand for the court to consider reasonable duration. 2. Trial court did not err in finding appellant

in arrears in his child support and maintenance payments and did not err in its discretionary forgiveness of half those arrearages.

3. Trial court did not err in ordering appellant to bear the entire cost of an audit and witness fees but refusing to order appellant to pay respondent's attorney fees.

Affirmed in part, reversed in part, and remanded.