In re the Marriage of Anne Loudon SAND, Petitioner, Appellant,

v.

Richard E. SAND, Respondent.

No. CX–85–980.

Court of Appeals of Minnesota.

Dec. 17, 1985.

Review Denied Jan. 31, 1986.

Kenneth P. Griswold, St. Paul, for appellant.

Todd R. Haugan, Minneapolis, for respondent.

Heard, considered and decided by FORSBERG, P.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

Anne Loudon Sand appeals from a May 1, 1985 order denying her motion for modification in permanent maintenance under Minn.Stat. § 518.64 (1984). Under a January 7, 1975 decree and pursuant to stipulation, maintenance was to be reduced by $300 per month in January 1985. The motion sought to set aside this reduction or, alternatively, to increase the maintenance award. On appeal she claims that the denial of her motion constituted an abuse of discretion. We affirm.

## FACTS

Anne and Richard Sand were married on June 22, 1956 and divorced on January 7,

1975. Respondent was at that time, and remains, a physician. Appellant was a housewife and had not worked outside the home since 1962. She was 43 years old and in good health.

Under the decree and pursuant to stipulation, appellant received custody of the couple's two minor children. She was awarded monthly child support of $200 per child which was to terminate at emancipation. Respondent agreed to pay for reasonable college expenses for each child and retain full medical insurance. The parties agreed that respondent could claim both children as dependents for tax purposes. Appellant received marital property consisting of the homestead subject to a $42,000 mortgage, household goods and furnishings, a Wisconsin condominium unit and municipal bonds, totalling approximately $60,000. She also received non-marital property that included an $18,000 note, $5,000 in a savings account and 300 shares of General Motors common stock.

Appellant was further awarded permanent alimony:

> [Dr. Sand] shall pay [Mrs. Sand] as alimony $1,800.00 per month in two installments of $900.00 each * * *. The first installment shall be due January 5, 1975. This alimony shall continue for 10 years until January 5, 1985 when it shall be reduced $300.00 per month to $1,500.00 per month payable in two equal installments * * *. All alimony shall cease in the event [Mrs. Sand] dies or remarries.

On March 13, 1976, the first child attained majority, and on July 9, 1980 the second child attained majority. Maintenance remained at $1,800 per month. On January 11, 1985, appellant motioned for a modification in maintenance so as to eliminate the $300 reduction effective on January 5, 1985. Alternately, she sought an increase in maintenance. Her December 7, 1984 affidavit alleged "considerably reduced circumstances" and claimed increases in expenditures: 24% in mortgage payments, 93% in overall household expenses and 8% in taxes. The affidavit further alleged net income from self-employment ranging from a high of $2,664 in 1979 to a low of $262 in 1983. She asserted that her outside income was limited to the General Motors stock and $170 annually from a municipal bond. The affidavit also contained a general allegation of "poor health."

At a March 11, 1985 hearing, the referee was informed that respondent's counter-motion to dismiss had been only recently submitted. Appellant was granted 10 days to respond. Response was to be limited to respondent's counter-motion and affidavit. Appellant submitted a second affidavit on March 20, 1985. In it she alleged a deterioration in health and an inability to afford medical insurance. She further alleged that the Wisconsin condominium was involved in bankruptcy proceeding, a fact she claimed respondent knew. On May 1, 1985, by order, the district court adopted the referee's findings and recommendation to deny the motion. Appellant appeals from that order.

### ISSUES

1. Did the trial court's determination that the wife had a duty to rehabilitate and retrain herself despite an award of permanent maintenance in the dissolution decree constitute reversible error?

2. Did the trial court err in refusing to modify the spousal maintenance award?

### ANALYSIS

██ The appeal from the district court's order denying the motion to modify is properly grounded in Minn.R.Civ.App.P. 103.-03(e) under the authority of *King v. Carroll*, 356 N.W.2d 449 (Minn.Ct.App.1984). A trial court has broad discretion in determining matters relating to maintenance. An appellate court will not find an abuse of discretion unless the trial court's determination is based on a clearly erroneous conclusion that is against logic and the facts on record. *Rutten v. Rutten*, 347 N.W.2d 47 (Minn.1984); *Nelson v. Nelson*, 371 N.W.2d 19 (Minn.Ct.App.1985). Moreover, a maintenance award is to be modified only when there is clear proof of a substantial

change in circumstances from the time of the divorce. *Peterson v. Peterson*, 304 Minn. 578, 231 N.W.2d 85 (1975).

A party seeking modification in a maintenance award must positively show one or more of the following:

(1) substantially increased or decreased earnings of a party; (2) substantially increased or decreased need of a party; * * or (4) a change in the cost-of-living for either party as measured by the federal bureau of statistics, any of which makes the terms unreasonable and unfair.

Minn.Stat. § 518.64, subd. 2 (1984). In the present case, appellant sought modification on alternate grounds. First, the substantially increased earnings of respondent, and second, her substantially increased need.

1. *Permanent Maintenance/Duty to Rehabilitate.* Although the parties may not have labeled their language as such, it is clear that the 1975 dissolution decree awarded appellant permanent maintenance. Appellant argues chiefly that given this fact, she was not legally obligated to rehabilitate herself. She claims that the trial court committed reversible error when it concluded that occupational rehabilitation was required. She supports this claim by referring to legal inconsistencies contained within the trial court's order:

Minnesota appellate decisions concerning rehabilitative maintenance are not applicable to this proceeding.

\* \* \* \* \* \*

10. That the purpose of spousal maintenance is to care for the wife's needs after divorce, not to provide her with a lifetime profit-sharing plan, *Kaiser v. Kaiser*, 290 Minn. 173, 186 N.W.2d 678 (1971); that, *although the maintenance award was permanent, Petitioner had an obligation to retrain or rehabilitate herself so as to increase her earning power;* that there has not been a substantial change in the financial circumstances of the parties as contemplated by M.S. Chapter 518.64, Subd. 2; *that the failure of the Petitioner to increase her earning potential with an award of permanent alimony at age 45 should*

*not become the husband's responsibility and basis for an increase in maintenance,* See *Crampton v. Crampton,* (Minn.App.1984); and that Petitioner's motion for an increase in spousal maintenance should be and is hereby denied. (emphasis supplied)

The court's "profit-sharing" remark is merely dictum. Accordingly, we confine our discussion to the trial court's conclusion that an obligation to rehabilitate exists despite an award of permanent maintenance and its finding that appellant did not meet this standard.

It is well established that conclusions of law are not binding on appellate courts. *Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349, 354 (Minn.1977); *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn.1977). In such circumstances, an appellate court is free to exercise its independent judgment. *Van Dee Loo v. Van Dee Loo,* 346 N.W.2d 173, 175 (Minn.Ct. App.1984) (determination of marital or non-marital property is question of law). Moreover, findings of fact that are controlled or influenced by errors of law will be set aside by a reviewing court. *In re Holden's Trust,* 207 Minn. 211, 291 N.W. 104 (1940). Appellant contends that the court's reference to *Crampton v. Crampton,* 356 N.W.2d 768 (Minn.Ct.App.1984), as support for its decision, signifies that it utilized an erroneous standard. We agree that *Crampton* is not applicable to this case.

In *Crampton,* the appellant/wife sought to continue maintenance beyond the eight-year period designated in the original decree. The sole ground asserted for modification was a substantial increase in the husband's earnings. The trial court denied the motion and this court affirmed, stating:

The court viewed the original award as one for *"rehabilitative maintenance,"* as described in *Otis v. Otis,* 299 N.W.2d 114 (Minn.1980), and felt that Julia Crampton's rehabilitative failure should not become Richard Crampton's responsibility.

*Crampton,* 356 N.W.2d at 770 (emphasis supplied).

In *Crampton,* the appellant's failure to increase her earning power was not in itself dispositive. The failure to do so became a key factor because the original maintenance award was "rehabilitative" in nature. Here, there is no debate over the original award as permanent in nature.

Appellant relies on *Ramsay v. Ramsay,* 305 Minn. 321, 233 N.W.2d 729 (1975), to support her claim that rehabilitation or retraining is not an obligation that co-exists with permanent maintenance. In *Ramsay,* as in the present case, the parties entered into a pre-dissolution stipulation. Five years later, the husband motioned for a termination in alimony payments because the wife started working on a part-time basis and could have extended her hours if she desired. The trial court terminated alimony and the supreme court reversed, finding the wife's decision to work part-time foreseeable by both parties at the time of the divorce. The "foreseeability" finding was based on the court's characterization of alimony payments as "modest" in relation to the husband's income. *Ramsay,* 305 Minn. at 324, 233 N.W.2d at 731.

Nothing in the record here indicates that the parties contemplated future employment by appellant. To the contrary, respondent specifically states in his affidavit

[A]t no time during his negotiations with [appellant] did she represent to him or his attorney that she anticipated receiving significant earnings from self-employment at anytime in the future.

Accordingly, appellant argues that since her future employment was not foreseeable, she did not subsequently acquire an obligation to retrain or rehabilitate herself. *Ramsay,* however, is not directly on point with the facts in this case and therefore not dispositive of the issue before us.

Minnesota divorce law has undergone a number of significant changes in recent years. In particular, the Minnesota Supreme Court's decisions in *Abuzzahab v. Abuzzahab,* 359 N.W.2d 12 (Minn.1984), *subseq. appeal,* 359 N.W.2d 329 (Minn.Ct.

App.1984), and *McClelland v. McClelland,* 359 N.W.2d 7 (Minn.1984), leave little doubt that permanent maintenance is often more honored than adhered to. The 1985 amendments to section 518.552, however, demonstrate legislative preference that permanent maintenance remain a viable option for courts to consider. *See* 1985 Minn. Laws ch. 266, § 2 (amending Minn.Stat. § 518.552).

This court is not asked to determine the propriety of the original maintenance award. Nonetheless, the obligations inherent in rehabilitative maintenance are relevant to our decision because they provide a comparison point for determining the existence of similar obligations in a permanent maintenance award.

Traditionally, an award of permanent alimony was viewed as a substitute for the husband's duty to support his wife. *Loth v. Loth,* 227 Minn. 387, 35 N.W.2d 542 (1949). The husband's obligation was based on the assumption that the wife was married at a time when the "prevailing social custom made her professional career subordinate to her husband's * * *." *Otis v. Otis,* 299 N.W.2d 114, 118 (Minn.1980) (Otis, J., dissenting). Factors considered material in an award of permanent maintenance included:

[L]ength of the marriage, the wife's age, health, *earning capacity, lack of vocational skills or independent resources,* contribution to marriage by child-rearing and maintenance of a family home in such a way as to contribute to establishment and furtherance of the husband's career, and resources and income of the husband.

*Abuzzahab,* 359 N.W.2d at 15 (Wahl, J., dissenting) (emphasis supplied). *See also Loth,* 227 Minn. 387, 35 N.W.2d 542; *Arundel v. Arundel,* 281 N.W.2d 663, 666 (Minn.1979). In *Loth,* the court upheld the wife's award of permanent alimony stating, "[t]he wife here needs the amounts awarded * * * she *has no earning capacity.*" *Id.,* 227 Minn. at 401, 35 N.W.2d at 550.

In 1978, the Minnesota Legislature adopted a number of significant changes

relating to the field of domestic relations, including a section that established grounds for a "maintenance" award. 1978 Minn. Laws, ch. 772 § 51 (codified as Minn. Stat. § 518.552 (1978)). The section permitted an award of maintenance when the moving spouse:

> Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn.Stat. § 518.552, subd. 1(b) (1978).

In *Arundel,* a 1979 case, the court affirmed the trial court's award of permanent maintenance to the wife. In doing so, the court focused heavily on the wife's ability to become self-sustaining:

> While it may be the trend in the law to provide alimony only so long as it is reasonably necessary for the once-dependent spouse to attain self-sufficiency, certain exceptional cases warrant an award of permanent alimony. The trial court recognized, and rightly so, that this is such a case. *Petitioner has not been educated to a professional or marketable skill and has been out of the job market for nearly 30 years. Her efforts during those years were devoted to raising five children and maintaining the family home in such a way as to contribute to the establishment and furtherance of her husband's career and to the affluent circumstances in which the family lived at the time of the separation.*

*Arundel,* 281 N.W.2d at 666 (emphasis supplied).

The *Arundel* court analogized its facts to those in *Cashman v. Cashman,* 256 N.W.2d 640 (Minn.1977), where the court held that the denial of permanent maintenance constituted an abuse of discretion. The *Arundel* court said:

> Now, at 51 years of age, with certain health problems and without vocational skills or independent resources, it is unreasonable * * * *to expect petitioner to be financially successful enough in the labor market to support her needs,* although she will doubtless wish to make reasonable efforts to do so. She is entitled to suitable support.

*Arundel,* 281 N.W.2d at 666 (emphasis supplied).

In *Otis,* the supreme court upheld an order terminating monthly payments to the wife after four years. The majority went to great lengths to distinguish the standards underlying permanent and rehabilitative maintenance, relying on decisions by the Florida Court of Appeals:

> "[I]f the spouse has the capacity to make her own way through the remainder of her life unassisted by the former husband, then the courts cannot require him to pay alimony other than for rehabilitative purposes." (*Roberts v. Roberts,* Fla.App.1st 1973, 283 So.2d 396, 397); * * *.) *The public policy of the State would be utterly frustrated by an award of permanent alimony where it affirmatively appears that the wife has not only the capacity but also the desire to be self-supporting.*

*Otis,* 299 N.W.2d at 166 (quoting *Cann v. Cann,* 334 So.2d 325, 330 (Fla.App.1976) (citations omitted)).

Following *Otis,* the Minnesota Legislature amended section 518.552 to provide for "either temporary or permanent" maintenance after consideration of all relevant factors including:

> (b) * * * [T]he probability, given the spouse's age and skills, of completing education or training and becoming fully self-supporting;
>
> \*    \*    \*    \*    \*    \*
>
> (d) The duration of the marriage, and in the case of a homemaker, the length of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished.

Minn.Stat. § 518.552, subd. 2 (1982) (clarifying amendments underlined); *McClelland,* 359 N.W.2d at 11 (Wahl, J., dissenting). The 1985 amendments to section

518.552 incorporate a number of additional factors to be considered by a court when awarding maintenance including loss of earnings, seniority, retirement benefits and contribution of one party in furtherance of the other party's employment or business. 1985 Minn. Laws ch. 266 § 2 (amending Minn.Stat. § 518.552).

■ Plainly, rehabilitative maintenance contemplates future self sufficiency of the spouse receiving the award after a period of retraining. A fair reading of the cases and statutory provisions convinces us that similar considerations do not exist when permanent maintenance is awarded. Contrary to the trial court's conclusion, appellant did not incur an obligation to increase her earning power through occupational retraining.[1] By concluding that such an obligation existed, the trial court erroneously disregarded its own finding that "Minnesota appellate decisions concerning rehabilitative maintenance are not applicable to this proceeding."

While we find error in the basis for the trial court's decision, we do not similarly find error in the result. "A decision is not to be reversed if it is correct although based on incorrect grounds." *Braaten v. Midwest Farm Shows*, 360 N.W.2d 455, 457 (Minn.Ct.App.1985) *citing Cambern v. Hubbling*, 307 Minn. 168, 238 N.W.2d 622 (1976).

■ 2. We agree that appellant has failed to meet her burden of proving a substantial change in circumstances. The trial court found that respondent had *net* income of $121,000 in 1975, the year of the dissolution decree. Although we find no independent documentation in the record to support this finding, we note that appellant does not dispute this figure as accurately reflecting respondent's 1975 earnings. Respondent submitted documented 1984 net income of approximately $119,000 and projected 1985 net income of approximately $132,000. He attributed the 1984 decrease in earnings to the loss of clinical allergy work resulting from the decision of several health maintenance organizations to handle allergy work "in-house." Given these figures, we do not find a substantial increase in respondent's earnings.[2]

Appellant further contends that the trial court erred in failing to consider a deterioration in her health as evidence of her substantially increased need. Clearly, a deterioration in a party's health provides adequate grounds for a substantial change in circumstances. *Rydell v. Rydell*, 310 N.W.2d 112 (Minn.1981). In *Rydell*, however, medical testimony supported the movant's claims. Here, the only evidence properly before the trial court consisted of appellant's general allegation of "poor health." This allegation was unsupported by any documentation. Without more, the alleged deterioration in appellant's health is plainly inadequate to meet the statutory burden.

Appellant's claims that an increase in her living expenses since 1975 further supports a finding of a substantially increased need. We do not agree. Appellant's affidavit sets out increases in fixed expenses of approximately 20% in mortgage payments, 90% in heat and various utilities, 8% in taxes and 14% in expenses relating to non-income producing property. We do not think that these alleged increases over a 10-year period constitute a substantial change in circumstances.

We think it is relevant here that the parties stipulated to the level of maintenance, although this fact alone does not control our decision. *See Kaiser v. Kaiser*, 290 Minn. 173, 186 N.W.2d 678 (1971). The

---

1. We are mindful of our decision in *Eckholm v. Eckholm*, 368 N.W.2d 386 (Minn.Ct.App.1985). Since that case is distinguishable on its facts, it does not control the present case.

2. Respondent characterizes his $121,000 earnings in 1975 as *gross* earnings but does not furnish a copy of his 1975 tax return. Since appellant does not dispute the trial court's char-acterization of respondent's 1975 earnings as *net* income, we do not pass on the propriety of this finding. Even if we were to accept the $121,000 as gross income and compare it to 1984 gross income of $149,000, we would find an increase of 23% to fall short of a "substantial increase" in respondent's earnings.

trial court appears to denote the $300 reduction in spousal maintenance with the cessation of child support obligation. The decree, however, clearly provides for spousal maintenance and child support separately. Further, an affidavit submitted by appellant's former attorney asserts that the parties did not consider these obligations as dependent on one another during negotiations. In short, there is nothing in the record to support a finding that the $300 reduction in spousal maintenance was, in fact, earmarked for child support. Since we agree with the trial court's denial of appellant's motion, however, we find this to be harmless error.

We emphasize that the presence of a stipulation between the parties to a dissolution does not prevent a subsequent modification under Minn.Stat. § 518.64 (1984). The authority to modify a dissolution decree is not dependent on the existence of a stipulation but rather on a proper showing of a substantial change in circumstances that make the terms of the decree unreasonable and unfair. Although appellant has failed here to make an appropriate showing, she is in no way prevented from seeking future modification based on a documented deterioration in health.

### DECISION

The trial court erred when it adopted standards underlying rehabilitative maintenance in a motion to modify a permanent maintenance award. Notwithstanding this error, the trial court properly denied appellant's motion to set aside a $300 reduction in maintenance stipulated to by the parties when appellant failed to show a substantial change in circumstances.

Affirmed.